## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Debra Bond Estes, | ) | Case No.: 07-04648-BGC-7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | | |
| Bettye Ann Anglin and | ) | |
| Forrest Anglin, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | A. P. No.: 07-00235-BGC-7 |
| | ) | |
| Debra Bond Estes, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION FOR SUMMARY JUDGMENT

The matter before the Court is a <u>Motion for Summary Judgment</u> filed on January 28, 2008, by the plaintiffs Bettye Ann Anglin and Forrest Anglin in Adversary Proceeding No. 07-00235.[1] Docket No. 9. After notice, a hearing was held on May 8, 2008. Mr. Andre M. Toffel and Mr. James Franklin Walsh, attorneys for the plaintiffs, and Mr. Ted R. Pearson, attorney for the debtor/defendant, appeared. The matter was submitted on the pleadings, motions, briefs, exhibits, arguments, and the records in seven related actions.[2]

---

[1] Bettye Ann Anglin and Forrest Anglin filed a Chapter 7 petition in this Court on March 6, 2009. Their case is Case No. 09-01278-BGC-7. This Court has not considered the impact of that filing in making its determinations here, including the issue of whether the Chapter 7 Trustee is now the proper plaintiff in Adversary Proceeding No. 07-00235.

[2] Those seven actions include four bankruptcy matters and three state court matters. The four bankruptcy matters are: (1) Bankruptcy Case No. 02-01867, the debtor's prior Chapter 7 case; (2) Adversary Proceeding No. 02-00209, a complaint to determine dischargeability of a debt and to deny discharge filed in that prior case; (3) Bankruptcy Case No. 07-04648, the debtor's current Chapter 7 case; and (4) Adversary Proceeding No. 07-00235, the complaint filed in that case. The three state court matters are: (1) an action in Civil Action No. CV 2001-

## I. Background

The plaintiffs and the debtor, along with the debtor's husband James Estes, share a long history. In a prior memorandum opinion, this Court described their early relationships. It wrote:

> In 1997, Mr. Anglin was working for a commercial printing company. He invited Mr. Estes, who he had known for some time, to join the company and run its printing operations. He and Mr. Estes anticipated at the time that they might one day buy the company and go into business together. Pursuant to that plan, in July or August 1997, Mr. Anglin and Mr. Estes formed Office Source Printing, Inc. Their wives were the nominal stockholders of the corporation. Mr. Anglin purchased the assets of the company that he and Mr. Estes worked for at the time and transferred those assets to the new company. In the new company, Mr. Anglin was in charge of sales and marketing and Mr. Estes was in charge of the printing operations, office operations and keeping the company's books. Mr. Anglin was the president of the company and Mr. Estes was its vice-president. The records of the Alabama Secretary of State's office reflect that Betty Ann Anglin and Debbie B. Estes each owned fifty percent of the corporation's stock. Neither paid any consideration for that stock. The company was represented by the law firm of Galese & Ingram.
>
> In March or April of 1998 the name of the corporation was changed to Print Solutions, Inc. The quantity of their business was good and growing fast, according to Mr. Anglin. When the business started, it was billing around twenty or thirty thousand dollars a month. When Mr. Anglin left the company in March of 2000, it was billing around $100,000 to $150,000 a month. The Anglins were receiving over $100,000 a year in cumulative salaries. The company leased automobiles for their use and provided them with health insurance. Likewise, the Esteses were receiving over $100,000 a year in cumulative salaries. The company also leased automobiles for their use and provided them with health insurance.
>
> Of course, as in the case of most business enterprises, Print Solutions had to incur debt in order to operate its business. Mr. Anglin and Mr. Estes were required to personally guarantee over a million dollars of that debt. And a smaller portion of the company's debt was guaranteed by Mrs. Estes and Mrs. Anglin.

---

1834 where a judgment was entered in favor of Bettye Ann Anglin against the parties' former corporation for $1,000,000; (2) an action in Civil Action CV 2002-0820 where a judgment was entered in favor of Forrest Anglin against the parties' former corporation for $1,000,000; and (3) a complaint in Civil Action CV 2005-2348 filed against the debtor by the plaintiffs to hold Mrs. Estes personally responsible for those two $1,000,000 dollar judgments.

<u>Memorandum Opinion on Complaint and Objection to Discharge Pursuant to 11 U.S.C. §§ 523 and 727</u>, entered March 22, 2005. A.P. No. 02-00209, Docket No. 33.

The most recent years have not been as pleasant for the Anglins and the Estes. Their relationship over the next several years became litigious. The immediate proceeding is their latest court action.

## II. Findings of Fact

Much of the activity in this, the debtor's fourth Chapter 7 case, revolves around her third Chapter 7 case filed jointly with her husband, James H. Estes, on <u>March 7, 2002</u>. Case No. 02-01867.[3] That third case is frequently referred to by the parties and this Court as, "the debtor's prior case."

Among the debts Mr. and Mrs. Estes listed in that third case was one for $300,000 to Bettye Ann Anglin. That listing referred to two state court civil lawsuits. Proceeding No. 7, Schedule F.[4] <u>After</u> that third case was filed, judgments were entered against <u>Print Solutions, Inc.</u>, but not the debtor, in those two state court actions.[5] The first was entered on April 10, 2002, in Civil Action CV 2001-1834 in favor of Bettye Ann Anglin for $1,000,000. Exhibit 4 to <u>Anglin's Reply to Memorandum in Opposition to Motion for Summary Judgment</u>, A.P. No. 07-00235, Docket No. 26-8 (State court docket sheet for Case No. CV 2001-1834). The second was entered on October 23,

---

[3] As stated, the current case is the debtor's fourth Chapter 7 case. The debtor filed her first Chapter 7 case jointly with James C. Estes on November 24, 1986. Case No. 86-09530-RCF-7. She received a discharge on March 3, 1987. The debtor filed her second Chapter 7 case jointly with James H. Estes on July 21, 1989. Case No. 89-09059-TBB-7. Although she was not legally entitled to a discharge in that second case because the case was filed within six years of a prior one in which she received a discharge, a second discharge was entered on June 12, 1990. As stated, the debtor filed her third Chapter 7 case jointly with James H. Estes on March 7, 2002. Case No. 02-01867-BGC-7. This Court denied her discharge in that case. The debtor filed the current Chapter 7 case alone on October 15, 2007.

[4] Case No. 02-01867-BGC-7 began as a paper file case. This Court began to migrate to electronic case management in February 2004. The debtors' petition in Case No. 02-01867 was filed before that time and is not available electronically. The Court refers to the entry numbers for those documents with a "Proceeding No." Electronically available documents are referred to with a "Docket No."

[5] The debtor, who was a stockholder of Print Solutions, Inc., was a defendant in both of those cases but was dismissed when she filed her prior bankruptcy case.

3

2002, in Civil Action CV 2002-0820 in favor of Forrest Anglin for $1,000,000.[6]  Exhibit 4 to Anglin's Reply to Memorandum in Opposition to Motion for Summary Judgment, A.P. No. 07-00235, Docket No. 26-8 (Order by Circuit Judge Houston L. Brown in Case No. CV 2002-0820).[7]

On August 30, 2002, the plaintiffs filed a complaint in bankruptcy case number 02-01867 ("the debtor's prior case") against the debtor and her husband to determine the dischargeability of a debt and to deny the Estes' discharges.  A.P. No. 02-00209, Proceeding No. 1.[8]

After a trial, this Court entered an order on March 22, 2005, holding that certain debts owed by the debtor to the plaintiffs were dischargeable, but that the debtors' discharges were denied pursuant section to 727(a)(4)(A) of the Bankruptcy Code, 11 U.S.C. § 727(a)(4)(A).  That order read:

> In conformity with and pursuant to the Memorandum Opinion entered contemporaneously herewith, it is ORDERED, ADJUDGED AND DECREED that:
>
> 1. Judgment is entered in favor of the Defendants and against the Plaintiffs as to any Section 523 causes of action;
>
> 2. Judgment is entered in favor of the Plaintiffs and against the Defendants as to the Section 727 cause of action;
>
> 3. The Plaintiffs' Complaint is DENIED as to the Section 523 causes of action;
>
> 4. The Plaintiff's Objection to Discharge Pursuant to Section 727 is SUSTAINED;

---

[6] In their arguments and briefs, the parties refer to a single $1,000,000 judgment, suggesting that the two state court actions may have been consolidated.  The resolution of the legal issues here is not affected by whether there was one consolidated judgment or two separate judgments.

[7] The plaintiffs agree that the "debts" at issue here are the judgments entered against Print Solutions in state court cases CV 2001-1834 and CV 2002-0820. Anglin's Reply to Memorandum in Opposition to Motion for Summary Judgment at 2, A.P. No. 07-00235, Docket No. 26.

[8] Adversary Proceeding No. 02-00209 also began as a paper file.  This complaint was filed before the Court migrated to electronic case management and is not available electronically.

5. A discharge shall not be granted to the defendants in this case.

<u>Order</u>, entered March 22, 2005, A.P. No. 02-00209, Docket No. 34. A Memorandum Opinion accompanying that order was entered the same day. Docket No. 33.

On April 1, 2005, the plaintiffs filed an appeal to the United States District Court for the Northern District of Alabama. A.P. No. 02-00209, Docket No. 39.

On April 19, 2005, the plaintiffs filed Civil Action CV 2005-2348 in the state court against the debtor seeking to hold the debtor personally responsible for the Print Solutions judgments. Exhibit 8 to <u>Memorandum in Opposition to Motion for Summary Judgment</u>, A.P. No. 07-00235, Docket Nos. 24-11 and 24-12. Their one count complaint alleged breach of contract, namely a breach of the parties' "<u>Pre-suit Mediation Settlement Agreement</u>."

On April 10, 2006, the district court entered an order affirming this Court's March 22, 2005, order. A.P. No. 02-00209, Docket No. 48.

On June 27, 2006, the plaintiffs amended their complaint and alleged: (1) the debtor was the alter ego of Print Solutions, Inc.; (2) the corporate veil of the corporation should be pierced; and (3) liability should be imposed on the debtor personally for the state court judgments which had been entered against Print Solutions. Exhibit 9 to <u>Memorandum in Opposition to Motion for Summary Judgment</u>, A.P. No. 07-00235, Docket No. 24-13.

After a bench trial, the state court entered an order on August 16, 2007, in CV 2005-2348 which: (1) found the debtor to be the alter ego of Print Solutions, Inc.; (2) declared the corporate veil of Print Solutions should be pierced to permit imposition of personal liability on the debtor for debts of the corporation; and (3) declared the debtor to be personally liable for the judgments previously entered against Print Solutions in CV 2001-1834 and CV 2002-0820. Exhibit 3 to <u>Anglin's Reply to Memorandum in Opposition to Motion for Summary Judgment</u>, A.P. No. 07-00235, Docket No. 26-7 (<u>Final Order</u> of the state court in CV 2005-2348).

Based on that order, this Court finds that the state court's judgment regarding the debtor's personal liability for the judgments against the corporation was based solely on the plaintiffs' amended count, that is the count regarding the piercing of the corporation's veil. The state court did not determine, declare, rule, or otherwise hold that the debtor personally breached the "Pre-suit Mediation Settlement Agreement." Similarly, the state court's <u>Final Order</u> reads, "A bench trial was held on the plaintiffs' <u>remaining claim</u> which seeks to impose personal liability on the defendant for the indebtedness of Print Solutions, Inc." Exhibit 3 to <u>Anglin's Reply to Memorandum in</u>

Opposition to Motion for Summary Judgment, A.P. No. 07-00235, Docket No. 26-7 (Final Order of the state court in CV 2005-2348) (emphasis added).[9]

The debtor filed the current Chapter 7 case on October 15, 2007.

### III. Issue and Contentions

#### A. Issue

The issue is: Are the judgments against Print Solutions, for which the debtor has been held personally liable, debts that are not dischargeable in the current case because they were, under section 523(a)(10) of the Bankruptcy Code, debts, "that... [were] or could have been listed or scheduled by the debtor in a prior case... in which the debtor... was denied a discharge...." 11 U.S.C. § 523(a)(10) (parenthetical added).[10]

#### B. Contentions

The plaintiffs contend that the subject judgments qualify as nondischargeable debts under section 523(a)(10) because the debts existed before the debtor filed her prior case, a case in which this Court denied the debtor's discharge. The debtor contends that the debts did not come into existence until after the debtor filed that prior case.

---

[9] There is additional support for this conclusion. The debtor asserts, based on the collateral estoppel effect of certain findings made by this Court in the debtor's prior case, that the state court disposed of the plaintiffs' breach of contract count prior to trial in a manner unfavorable to the plaintiffs. She argues, "Judge Vance allowed Defendant's motion to strike that count due to collateral estoppel." Amended Memorandum in Opposition to Motion for Summary Judgment at 2, A.P. No. 07-00235, Docket No. 28. Because the plaintiffs have not disputed that assertion, this Court presumes it to be true, especially since the final judgment in CV 2005-2348 reflects that the plaintiffs' count based on the debtor's alleged breach of the "Pre-suit Mediation Settlement Agreement" did not make it to the trial stage. So aside from the fact that the state court did not affirmatively determine that the debtor breached the "Pre-suit Mediation Settlement Agreement," its unfavorable disposition of the plaintiffs' count based on the alleged breach of that agreement establishes it was not breached by the debtor. Either way, it is clear that the debtor's liability to the plaintiffs does not stem from her breach of the "Pre-suit Mediation Settlement Agreement." Instead, it stems from the determination that she was the alter ego of the corporation.

[10] Section 523(a)(10) is the only ground pleaded by the plaintiffs in the pending complaint and the only ground relied on in the summary judgment motion before the Court. Complaint for Non-Dischargeability Judgment, A.P. No. 07-00235, Docket No. 1; Motion for Summary Judgment, A.P. No. 07-00235, Docket No. 9.

6

## IV. Conclusions of Law

### A. Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, a moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact <u>and</u> that the moving party is entitled to judgment as a matter of law. The framework in this Circuit for making that determination is outlined in the decision of the Court of Appeals for the Eleventh Circuit Court in <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112 (11th Cir.1993). This Court has followed that framework in this proceeding.

### B. Bankruptcy Law

Section 523(a)(10) of the Bankruptcy Code provides:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from <u>any debt</u> – <u>that was or could have been listed or scheduled by the debtor in a prior case</u> concerning the debtor under this title or under the Bankruptcy Act <u>in which the debtor</u> waived discharge, or <u>was denied a discharge</u> under section 727(a)(2), (3), (4), (5), (6), or (7) of this title, or under section 14c(1), (2), (3), (4), (6), or (7) of such Act....

11 U.S.C. § 523(a)(10) (emphasis added).

The plaintiffs' general argument is that the two, one million dollar state court judgments are nondischargeable in this case pursuant to section 523(a)(10) because the state court in CV 2005-2348 held the debtor personally liable for those judgments as the alter ego of Print Solutions, Inc.

Specifically, their argument is three-fold. First, they argue that the judgments against Print Solutions were based on the failure of the corporation to abide by the parties' Pre-Suit Mediation Settlement Agreement. In their <u>Anglin's Reply to Memorandum in Opposition to Motion for Summary Judgment</u> they write, "It is the failure of Print Solutions, Jamie and Debbie Estes, to live up to that Settlement Agreement that led to lawsuits against Print Solutions and led to million dollar judgments in both CV 01-1834 and CV 02-0820." <u>Id</u>. at 1, A.P. No. 07-00235, Docket No. 26.[11] Second, they argue that because a judgment was entered against the debtor which held the debtor to be personally responsible for those judgments under a theory

---

[11] The agreement is attached as Exhibit 1 to that pleading.

of alter ego, that judgment against the debtor can be considered the same debt as the judgments against Print Solutions. Third, they argue that these three "singular" judgments arose before the debtor filed the Chapter 7 case in which this Court denied the debtor's discharge. The plaintiffs conclude that because these debts were prepetition debts in the debtor's prior Chapter 7 case, section 523(a)(10) prevents them from being discharged in the current case.

For the plaintiffs to succeed under section 523(a)(10), they must prove that the subject debts were prepetition debts in the case in which this Court denied the debtor's discharge. The first step in deciding whether they satisfied that burden is to consider the nature of prepetition debts under the Bankruptcy Code.

The Code defines a "**debt**" as a, "liability on a claim." 11 U.S.C. § 101(12). A "**claim**" is defined as a "right to payment." 11 U.S.C. § 101(5)(A). Those terms presuppose that the relevant "right to payment" is held by a creditor who can enforce it against the debtor, otherwise there would be no need to pursue its discharge. In conformity, a "**creditor**" is defined as an, "entity that has a claim against the debtor that <u>arose at the time of or before the order for relief</u> concerning the debtor." 11 U.S.C. § 101(10)(A)(emphasis added).

These qualifying definitions are important in the instant situation because section 521(a)(1)(B)(i) of the Code requires every debtor to file, unless the Court orders otherwise, "a list of assets and liabilities." 11 U.S.C. § 521(a)(1)(B)(i). "**Liabilities**" as used in section 521(a)(1)(B)(i) (as the plural of "liability,") is synonymous with "**debts**." And as defined above, those "**debts**" are the things that are, as discussed above, owed to "**creditors**" who by definition hold only prepetition claims.[12] Thus, a debtor's duty under section 521(a)(1)(B)(i) to file a schedule of liabilities is the duty to file a schedule of <u>prepetition</u> "liabilities." Those are the debts captured by section 523(a)(10)'s debts which were or, "could have been listed or scheduled..." and the ones that were or "could have," been discharged in a prior case.

Based on the above, the Court finds that section 521(a)(1)(B)(i) did not require this debtor to include any debts other than prepetition debts in her schedules. In addition, this Court finds that the phrase "was or could have been listed or scheduled" in section 523(a)(10) does not refer to anything other than debts which arose prior to the filing of this debtor's prior case.

The second step in determining whether the plaintiffs satisfied the burden of proving that their debts were prepetition debts in the debtor's prior bankruptcy case requires application of Alabama law.

---

[12] The term "liabilities," which is not defined in the Code, was used by Congress to mean the same as "liability" in the phrase "liability on a claim." "Liabilities" was shorthand for "liabilities on claims," which are necessarily owed to "creditors," who are defined as entities holding prepetition claims.

8

## C. Alabama Law

As explained above, the plaintiffs contend that the debts owed by Print Solutions, Inc. for breach of the "Pre-suit Mediation Settlement Agreement" are the same as the debt imposed on the debtor by the judgment piercing the corporate veil.

Under Alabama law, a cause of action to pierce the corporate veil and impose liability on a shareholder for a debt owed by a corporation under an alter ego theory does not arise until a judgment holding the corporation liable for that debt has been rendered in favor of the person to whom it is owed. Backus v. Watson, 619 So.2d 1342, 1343 (Ala. 1993). It is not until then that a shareholder's potential liability for the corporation's debt could be assessed, or that whatever applicable statute of limitations for such liability would begin to run. Id. at 1344. The situation in the instant case is just the opposite. In the instant case, the debtor filed her prior bankruptcy case; then the plaintiffs obtained their judgments against the corporation; then they obtained their "corporate veil" judgment against the debtor.

In Backus, the plaintiff sought to hold the owner of a corporation personally liable under an alter ego, piercing the corporate veil, theory for a judgment she had obtained against the corporation under the Dram Shop Act. Characterizing that situation in Backus, Justice J. Gorman Houston Jr. wrote for the Court, "Backus's present action against Watson was based on a cause of action entirely different from the one on which her action against the club was based...." Id. at 1344-45. He added, "The litigation of the central issue presented in this action... [was] whether the club was operated as Watson's alter ego and, therefore, whether the "corporate veil" should be pierced...." Id. at 1345. The issues involved in the former were not the same as those involved in the latter. Id.

The same is true here. The issues in the plaintiffs' action against Print Solutions were: (1) whether or not the corporation owed the debt as a result of its breach of some legal duty it owed to the plaintiffs; and (2) how much was owed. The issue in the action against the debtor for piercing the corporate veil was whether the debtor treated the corporation as a separate entity rather than her alter ego. Id. at 1345.

In the matter before this Court, the judgments rendered in the actions on the debt against Print Solutions constituted adjudications that the corporation (not the debtor) breached the "Pre-suit Mediation Settlement Agreement." The judgment rendered in the "piercing" action constituted an adjudication that the corporate judgments, based on that breach, may be enforced against the debtor because she failed to treat the corporation as a separate corporate entity. The state court did not hold that the corporate judgment could be enforced against the debtor because she personally breached the "Pre-suit Mediation Settlement Agreement." Indeed, the issues in the piercing action could not have been raised or litigated in the action on the debt, and vice versa. Id. Therefore, resolution of the issues in the action on the debt did not resolve any of the issues in the piercing action, and the judgments entered on the debt had no res judicata or collateral estoppel effect in the piercing action. Id.

9

In other words, until the debts owed by the corporation to the plaintiffs were reduced to judgment, the plaintiffs did not possess any right to have the corporate veil of Print Solutions, Inc. pierced. Therefore, the debtor's potential, personal liability for those debts could not have come into being until the plaintiffs reduced the debts to judgments against the corporation. At that point, but not before, the plaintiffs acquired a cause of action to pierce the corporate veil. With that authority, the plaintiffs could then pursue the debtor personally in an attempt to collect those judgments. Id. at 1343-1345.

### D.  The Junction of Bankruptcy and Alabama Law

In the context of a bankruptcy case, where a shareholder's liability for the debts of a corporation cannot arise until after a judgment is entered on those debts against the corporation, and where that judgment was not obtained until after a debtor filed a bankruptcy case, the judgment against the debtor cannot be prepetition. Consequently, such a debt cannot be scheduled in a bankruptcy petition or discharged by the shareholder in a bankruptcy case that was filed before any such judgment was rendered. That was the situation with Print Solutions and this debtor.

The debts of Print Solutions were not the debtor's debts when the debtor filed her 2002 case. That is true even if they were owed, albeit by the corporation, when that prior case was filed. Put simply, the debtor was not held responsible for those debts until the state court found her to be.

Notwithstanding these conclusions, two questions remain:

1. Is there any consequence for the debtor because she listed the plaintiffs' two state court lawsuits in her 2002 Chapter 7 petition?

As stated above, in their third Chapter 7 case (the "debtor's prior case") Mr. and Mrs. Estes listed a debt for $300,000 to Bettye Ann Anglin regarding two state court civil lawsuits. As explained throughout this memorandum, the judgments entered in those two state court actions were entered against Print Solutions Inc., not the debtor. The real issue then is does listing such a "debt" qualify the debt as one under section 523(a)(10) which includes a debt that, "was... listed or scheduled?" In the instant situation, it does not.

Neither the lawsuits nor the debts upon which they were based were the debtor's debts. <u>She was dismissed from those suits.</u> <u>The judgments in those suits were entered against the corporation, not her</u>. Those judgments constituted adjudications that the corporation, not the debtor, owed the debts upon which they were based. In other words, the fact that the debtor listed a debt in her schedules which was not hers, and which she did not owe, does not make it nondischargeable in a subsequent case. Listing a "debt" on a schedule does not make it a debt if it is not one already.

10

2. Were the Print Solutions' debts contingent debts and therefore required to be listed?

The word "debt," as used in the bankruptcy code, is a term of art with particular identifying characteristics. As explained above, it refers to a liability, whether contingent or noncontingent, liquidated or unliquidated, but overall, it is one <u>that is actually owed</u> by a debtor when the case is filed. Because it is owed, it is one that entitles a particular creditor to share in a distribution, if any, and one that may be discharged, assuming it is not otherwise made nondischargeable by section 523 or section 727.[13] Hence, the phrase, "could have been listed or scheduled," in section 523(a)(10) does not refer to something listed by a debtor on a petition <u>that is not a debt</u>, that is, something which the debtor does not owe and something that does not entitle a particular creditor to payment. But, are the claims which the Anglins contend are not dischargeable in the current case still contingent claims and therefore captured by section 523(a)(10)? The answer is no.

A contingent liability is a <u>present</u> obligation to render performance in the future if some specified event occurs. It is an inchoate obligation which exists prior to bankruptcy between the debtor and another entity in privity with the debtor that the debtor is not required to honor, perform, or pay unless something happens after the bankruptcy case is filed. It is a prepetition right of a "creditor" to require something from or of the debtor if something should happen or not happen in the future. The right exists before bankruptcy, but its exercise is precluded until and unless the specified contingency is fulfilled after bankruptcy. It is a responsibility of a debtor to a creditor which exists before bankruptcy to do something in the future if something else happens or does not happen after bankruptcy is filed.

Regardless of how it is described, a contingent claim represents a duty which exists prepetition that is owed by the debtor directly to a creditor, that is, someone who is in privity with the debtor. It is a prepetition claim just like a noncontingent claim is a prepetition claim.

In this case, the debtor did not owe a duty to pay the debts of Print Solutions prior to filing her previous Chapter 7 case. Print Solutions' debts included the judgments subsequently obtained by the plaintiffs and the debt on which those judgments were based. Print Solutions, Inc. was a separate legal entity from the debtor. Consequently, the judgments obtained by the plaintiffs against Print Solutions established that certain debts were owed to the plaintiffs by the corporation when the debtor filed her prior case. Those judgments did not establish that the debtor personally owed any debts to the plaintiffs when she filed her prior case. Those judgments did not, therefore, establish the existence of any claim or duty owed by the

---

[13] The plaintiffs did not include any section 727 or other section 523 allegations in their complaint.

debtor to the plaintiffs or anyone else prior to or at the filing of her previous bankruptcy case. They were not prepetition claims of any sort, whether contingent or not.[14]

Based on the above, the Court finds that although the debtor listed the debts owed by Print Solutions, Inc. in her prior Chapter 7 case, those debts were not debts that, in the words of section 523(a)(10), were debts that, "could have been listed or scheduled" by the debtor in her prior Chapter 7 case. Id.

### V. Summary of Conclusions

In summary, until the debts owed by the corporation to the plaintiffs were reduced to judgment, the plaintiffs did not have any right, contingent or otherwise, to pierce the corporate veil of Print Solutions, Inc. Hence, the debtor's potential, personal liability for those debts did not come into being until the plaintiffs reduced them to judgments against the corporation. At that point, but not before, they acquired a cause of action to pierce the corporate veil. Only then could they pursue the debtor personally for the purpose of collecting those judgments. Backus v. Watson, 619 So.2d at 1343-1345.

The post-bankruptcy "piercing" judgment created a new and distinct obligation which did not come into existence until after the debtor filed her previous case. Therefore, the debtor's personal responsibility for those judgments did not exist prior to the date that she filed that previous case and did not come into being until after that case was filed.

Since the judgments rendered in favor of the plaintiffs in state court were not debts which the debtor could have listed or scheduled in her prior bankruptcy case, they are not nondischargeable pursuant to section 523(a)(10). Therefore, the plaintiffs'

---

[14] Additional support exists for finding that the debtor did not have a debt to the plaintiffs when she filed her prior case. Print Solutions' breach of the "Pre-suit Mediation Settlement Agreement" was the basis for the judgments entered against Print Solutions. The piercing of the corporate veil was the basis for the judgment against the debtor. The state court did not find that the debtor breached the "Pre-suit Mediation Settlement Agreement," and it is clear that the corporate veil of Print Solutions, Inc. was not pierced because the corporation breached the "Pre-suit Mediation Settlement Agreement." The judgment against the debtor arose from the debtor's violation of her duty as a shareholder to treat Print Solutions, Inc. as a separate, independent legal entity. Consequently, although the plaintiffs argue that the judgments rendered against the corporation for its breach of the "Pre-suit Mediation Settlement Agreement," represent the "same debt" as the judgment piercing the corporate veil, this Court finds that the separate judgments were based on completely different facts, law, and causes of action. The fact that the piercing judgment may now be collected from the debtor is purely coincidental.

12

motion for summary judgment is, as a matter of law, due to be denied.  A separate order will be entered in conformity with this memorandum opinion.

    Dated: March 24, 2009                    /s/Benjamin Cohen
                                                      BENJAMIN COHEN
BC:sm                                                        United States Bankruptcy Judge